CHEROKEE NATION OF OKLAHOMA,
Plaintiff–Appellant,

v.

UNITED STATES of America,
Defendant–Appellee.

No. 88–1112.

United States Court of Appeals,
Tenth Circuit.

Oct. 25, 1991.

James G. Wilcoxen, Wilcoxen & Cate, Muskogee, Okl. (Paul M. Niebell, Washington, D.C., was also on the brief), for plaintiff-appellant.

Maria A. Iizuka, Dept. of Justice, Washington, D.C. (Roger J. Marzulla, Asst. Atty. Gen., Washington, D.C.; Roger Hilfiger, U.S. Atty. and Ralph Keen, Asst. U.S. Atty., Muskogee, Okl., Pauline H. Milius and Edward J. Shawaker, Dept. of Justice, Washington, D.C., and Whit Field, Office of the Sol., Dept. of the Interior, Washington, D.C., were also on the brief), for defendant-appellee.

Before HOLLOWAY and SEYMOUR, Circuit Judges, and BROWN, District Judge.*

---

* Honorable Wesley E. Brown, Senior United States District Judge for the District of Kansas, sitting by designation.

## ORDER

Plaintiff-appellant Cherokee Nation of Oklahoma petitions for rehearing and rehearing en banc. It makes two principal contentions of error. First, the Cherokee Nation contends that the panel's rejection of its "fair and honorable dealings" claim was premised in part on a misreading of *Burkhardt v. United States*, 84 F.Supp. 553, 113 Ct.Cl. 658 (1949). Second, the Cherokee Nation contends that the panel overlooked treaty history and the course of dealings between it and the United States that unequivocally demonstrate that a special relationship existed between the parties with respect to the government's exercise of its dominant navigational servitude. Although the Cherokee Nation's two main contentions merit some discussion, the panel concludes that the petition for rehearing should be denied.

The Cherokee Nation asserts that the panel overlooked background of the *Burkhardt* decision and misapprehended certain key facts in that case. In particular, it asserts that the factual grounds on which the panel distinguished *Burkhardt* were without foundation. It says that contrary to the suggestion of the panel opinion, when Congress referred the *Burkhardt* case to the Court of Claims, Congress had not already determined that the government should be liable for some amount and appropriated funds for this purpose; and that actually the court's task under the reference involved consideration of the merits of the claimants' action, and not just the issuance of a recommendation with respect to a fair and reasonable amount of compensation. According to the Cherokee Nation, the panel's faulty reading of *Burkhardt* led it to reject its "fair and honorable dealings" claim; in fact, the Court of Claims ruled in *Burkhardt* that claimants could permissibly assert factors of morality and honor under 28 U.S.C. § 2509's provision for "equitable" claims, and that these factors could provide the basis for relief against the government, even though it had elected to exercise its dominant navigational servitude. Likewise, says the Cherokee Nation, considerations of morality and honor underlying its "fair and honorable dealings" claim should override Congress' exercise of its navigational servitude here and permit relief. The Cherokee Nation argues that in *Burkhardt* there was no showing of a special relationship between the claimants and the government, and it says that Congress did not intend the special jurisdictional grant here in Pub.L. 97–385 (*see* our panel opinion, 937 F.2d 1539, 1540 n. 1) to constitute a more restrictive ground for relief than 28 U.S.C. § 2509, which applied in *Burkhardt*.

After thorough consideration of the Cherokee Nation's arguments, the panel concludes that it did misinterpret the factual circumstances underlying the *Burkhardt* case. In doing so, it was guided in part by the Claims Court's decision in *Confederated Tribes of the Colville Reservation v. United States*, 20 Cl.Ct. 31 (1990). The *Colville* court stated that Congress in *Burkhardt* "passed legislation authorizing the Secretary of the Treasury to pay compensation for the specific injuries earlier rejected by the [Supreme] Court" and observed that the primary issue in that case was "whether Congress had the authority to create a new cause of action and appropriate funds to pay" the claim. 20 Cl.Ct. at 51. We note that in fact, in *Burkhardt* the United States Senate had merely passed a private bill on behalf of the claimants, outlining possible terms of compensation, and referred the matter to the Court of Claims by Senate Resolution 231 of May 24, 1948. Absent enactment into law, the private bill did not determine the liability question, or damages, and no funds had been appropriated. Thus, it is true that the court's role in *Burkhardt* under the reference was not limited to a recommendation of a fair and reasonable amount of compensation. *See* Glosser, *Congressional Reference Cases in the United States Court of Claims: A Historical and Current Perspective*, 25 Am.Univ.L.Rev. 595, 601, 606–07, 627–28 (1976) (offering "a word of caution" that "[t]he mere passage of a congressional reference bill by a House of Congress does not mean that it has decided the question of liability in favor of the plaintiff").

In *Burkhardt,* the Court of Claims rendered its opinion in response to S. Res. 231. The opinion found that the term "equitable claim" as used in 28 U.S.C. § 2509 was not used in a strict technical sense but in a broader moral sense based on general equitable considerations; that with respect to Congress' power in Article 1 "to pay the debts" of the United States, debts include not merely those evidenced by a written obligation, but also debts or claims resting on a merely equitable or honorary obligation; that in *Burkhardt,* the "plaintiffs actually have more than a 'merely equitable or honorary obligation, (and) which would not be recoverable in a court of law if existing against an individual'"; that in the court's view, whether these or other plaintiffs are to be compensated by the government for the taking of their property is a matter exclusively for the determination of Congress; that $25,000 would be fair and reasonable compensation for the loss and damage of plaintiffs; and that 4½% per annum would be a reasonable rate of interest. This opinion was ordered transmitted to the Senate. 84 F.Supp. at 559–560.

■ We wish to correct our opinion's statement, 937 F.2d at 1547, on these matters and *Burkhardt,* but this does not alter the result here. The Cherokee Nation cites no authority which holds that the standard for granting relief on a fair and honorable dealings claim under Pub.L. 97–385 (referencing the Indian Claims Commission Act, 60 Stat. 1049, 1050, and its jurisdictional provisions which include fair and honorable dealings claims) is free of the requirement of showing a special relationship as a premise for recovery on such a claim. *See Aleut Community of St. Paul Island v. United States,* 480 F.2d 831, 838–39, 202 Ct.Cl. 182 (1973). To prevail on its claim under Pub.L. 97–385, therefore, the Cherokee Nation still was required to establish, *inter alia,* the existence of a special relationship between it and the government as a premise for liability here. This the Cherokee Nation has not done.

■ The Cherokee Nation argues to the contrary, however, in its second contention

for rehearing. It says that it demonstrated a course of dealing with the government relative to the navigation of waters under its control which was founded on the express terms of certain treaties and reflected in various documents. This course of dealing allegedly engendered the requisite special relationship between it and the government. In the cited treaties, the Cherokee Nation primarily underscores language indicating that the government perceived the need to specifically provide for the right of individual United States citizens to navigate waters under Cherokee Nation control. In the cited documents, the Cherokee Nation primarily points to language indicating that the government recognized the Cherokee Nation's authority for some regulation of commerce on waterways under its control and, in some cases, actively facilitated this regulation. Even considering the limited functions exercised by the Cherokee Nation respecting the waterways and the other matters argued, we cannot agree that this course of dealing gave rise to the requisite special relationship.

More specifically, we do not agree that by this course of dealing the government, in effect, consented to forego or restrict its historic rights under the Commerce Clause such that it was inhibited in the exercise of the navigational servitude, or bound to make compensation for the results of its exercise. *Cherokee Nation of Oklahoma v. United States,* 937 F.2d 1539, 1544 (10th Cir.1991); *see also United States v. Cherokee Nation of Oklahoma,* 480 U.S. 700, 707, 107 S.Ct. 1487, 1491, 94 L.Ed.2d 704 (1987) (even when sovereign states gain absolute right to navigable waters and soil under them, this right is unquestionably subject to paramount power of the United States to insure that waters remain free to interstate commerce).

Accordingly, the Cherokee Nation's petition for rehearing is DENIED. In accordance with Rule 35(b) of the Federal Rules of Appellate Procedure, the suggestion for rehearing en banc was transmitted to all the judges of the court in regular active service. No member of the panel and no

judge in regular active service on the court having requested that the court be polled on rehearing en banc, Rule 35, Federal Rules of Appellate Procedure, the suggestion for rehearing en banc is DENIED.